United States District Court

for the District of Columbia

| | | |
|---|---|---|
| Bukola J. Alibalogun | ) | |
| 5123 Hilmar Dr. | ) | |
| Forestville, MD  20747 | ) | Civil Action No. 1:13-cv-01244 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| First Coast Security Solutions, Inc. | ) | |
| 1 Independent Dr., No. 117 | ) | |
| Jacksonville, FL  32202 | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| Incorp Services Inc. | ) | |
| 1090 Vermont Avenue NW, Suite 910 | ) | |
| Washington, DC | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**
**(Breach of Contract, Wrongful Termination, and Discrimination)**

Plaintiff, Bukola J. Alibalogun, for her complaint against Defendants, alleges:

1. This is an action for breach of the agreement of employment, wrongful termination, and discrimination in violation of the D.C. Human Rights Act.

**Jurisdiction and Venue**

2. This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. §1332, in that plaintiff and defendant are citizens of different states, and the amount in controversy exceeds $75,000. Venue is proper in this Court because all of the circumstances giving rise to the claims occurred within this district.

**Allegations Common to All Counts**

3. Plaintiff is an individual, a resident of Prince George's County, Maryland, and a domiciliary and citizen of Maryland.

1

4. Plaintiff is informed and believes, and based thereon alleges, that defendant First Coast Security Solutions, Inc., is a Florida corporation doing business in the District of Columbia; and, that defendant is domiciled in Florida, and has no principal place of business or domicile in Maryland.

5. Plaintiff at all relevant times was an employee of First Coast.  Prior to her employment by First Coast, plaintiff had been employed as a security guard by First Coast's predecessor at the same location for 9 years, and became employed by First Coast for a short time after it obtained the contract as of October 1, 2012.  She had a strong record of performance, and no prior discipline.

6. Plaintiff's employment was terminated by First Coast on or about October 10, 2012. Plaintiff was terminated for an unsubstantiated and false reason, allegedly for making a false entry in an official government record.

7. On or about October 3, 2012, plaintiff was in transit to her job with First Coast following her morning shift as a security guard for a different contractor at the U.S. Department of Labor.  She had recently taken her vehicle to the repair shop, and had borrowed a truck to drive to work that day.  When she arrived at the location for her shift, approximately 20 minutes before her appointed start time of 4:00 p.m. (1600 hours), she discovered that the truck she was driving was too tall for the clearance in the garage where she normally parked.

8. Plaintiff parked the truck on the street (where it could not remain once rush hour started at 4:00 p.m.) and notified her supervisor, Stacy Savoy, that she was ready to report for duty, but had encountered a problem parking her vehicle, and that she would need to find suitable parking for it.

9. Plaintiff was to relieve a guard, Vonetta Moon, as she did at or about 4:00 p.m. (1600 hours) each day.  Plaintiff saw Ms. Moon at the site on that day, well in advance of the start of

her shift.  Ms. Moon and Ms. Savoy remained on post until plaintiff could park the truck she was driving.  She returned to the location by 1600 hours, dressed, and was ready to assume her post.

10.  Plaintiff had never been issued a duty belt by First Coast, and customarily used Ms. Moon's belt, or that of another officer, when she came on shift.  For this reason, she had to wait for Ms. Moon to return from a break to obtain the belt.  Ms. Savoy then instructed plaintiff to sign in for her shift at 1600 hours, and Officer Moon to sign out at the same time.

11.  In following the instruction of her superior officer, plaintiff did not make a false entry of any kind in the log.  She was present for her shift and attending to the work related activities of dressing and obtaining her duty belt at or about 1600 hours.  In signing the log, she was following a direct order from her supervisor; had she refused, she might have been charged with insubordination.  She was under no duty to question her supervisor's authority to direct her to sign in at 1600 hours when she was, in fact, on site at that hour.

12.  Plaintiff is informed and believes, and based thereon alleges, that Ms. Savoy was not terminated for instructing plaintiff and Ms. Moon to sign the log as they did, although in doing so she committed precisely the same violation as that with which plaintiff was accused.  Thus, the termination of plaintiff was clearly arbitrary.

13.  Plaintiff is informed and believes, and based thereon alleges, that it was known among First Coast personnel, prior to October 3, 2012, that several guards were going to be terminated, including one identified as "the African girl."  Plaintiff is further informed and believes that she was the only guard who was terminated around this time who was from an African country.  The fact that there was a plan to terminate her before the events of October 3, 2012, is further evidence that the way in which she was terminated and the reasons given therefor were in bad faith.

14.  Plaintiff is informed and believes, and based thereon alleges, that several of the guards at the location, including a shift supervisor, are homosexual women, and have hired

3

personal friends who share their sexual orientation to staff plaintiff's former site (or referred such persons to First Coast, resulting in their hiring).

15. The D.C. Human Rights Act was enacted to secure an end to discrimination for any reason other than that of individual merit, including sexual orientation. Plaintiff alleges that the civil and employment rights of all persons, regardless of sexual orientation, are equal under the law, and equally entitled to respect, and that the Human Rights Act protects all private employees in their sexual orientation, whether homosexual, heterosexual, or otherwise. Section 2-1401.11 of the Human Rights Act makes it unlawful for an employer in the District of Columbia to discharge any individual on that basis. Plaintiff is informed and believes, and based thereon alleges, that she was terminated so that a person of a different sexual orientation could be hired or assigned in her place. Given her record of performance, and the other circumstances discussed above, this inference is highly probable.

16. Section 2-1401.11(a) of the D.C. Human Rights Act makes it unlawful for an employer in the District of Columbia to discharge any individual on the basis of national origin. Plaintiff is informed and believes, and based thereon alleges, in combination with, or in the alternative to, the allegations of paragraph 12, that she was terminated because she immigrated from an African country.

17. Plaintiff was terminated pursuant to an unlawful plan, and the reasons given by her supervisor and/or First Coast were a pretext, manufactured after the decision had been made.

**Count 1**

(Breach of Contract)

18. Plaintiff incorporates by reference the allegations of paragraphs 1 through 17 as though fully set forth here.

19. Plaintiff is informed and believes, and based thereon alleges, that employment in the security guard industry, including employment by defendant, is subject to numerous customs, practices, and policies, which, taken together, form a set of contractual expectations on the part of employees. Among these are the expectation that termination will not be for a dishonest or deceitful reason.

20. By terminating Plaintiff, defendant materially breached plaintiff's contract of employment.

21. Plaintiff has been proximately and foreseeably damaged by defendant's breach, in that he has sustained a loss of earnings and benefits in the amount of at least $55,000.

**Count 2**

(Wrongful Termination)

22. Plaintiff incorporates by reference the allegations of paragraphs 1 through 17 as though fully set forth here.

23. Plaintiff is informed and believes, and based thereon alleges, that employment in the security guard industry is subject to numerous customs, practices, and policies, which, taken together, form a set of contractual expectations on the part of employees. Among these are the expectation that termination will not be for a dishonest or deceitful reason.

24. By terminating Plaintiff, defendant materially breached a duty to plaintiff not to terminate plaintiff for a false reason. Defendant's actions have injured plaintiff's ability to pursue

her livelihood, in that plaintiff may suffer disqualification from performing other work as a security officer because of the false and injurious reason given for her termination.

25. Plaintiff has been proximately and foreseeably damaged by defendant's breach, in that he has sustained a loss of earnings and benefits in the amount of at least $55,000.

26. Plaintiff has suffered emotional and physical injury as a direct result of the wrongful termination, and has sustained damages in the amount of at least $50,000.

**Count 3**

(Sexual Preference Discrimination – DCHRA)

27. Plaintiff incorporates by reference the allegations of paragraphs 1 through 17 as though fully set forth here.

28. Plaintiff is informed and believes, and based thereon alleges, that she was terminated in order that a homosexual person could be assigned to her position. Plaintiff was subjected to discrimination on the basis of her sexual orientation (heterosexual) when she was terminated for that reason.

29. Plaintiff has suffered damages as a proximate and direct result of the discrimination, including but not limited to loss of position, and loss of earnings and benefits in the amount of at least $55,000.

30. Plaintiff has suffered emotional and physical injury as a direct result of the discrimination, and has sustained damages in the amount of at least $50,000.

**Count 4**

(National Origin Discrimination – DCHRA)

31. Plaintiff incorporates by reference the allegations of paragraphs 1 through 17 as though fully set forth here.

32. Plaintiff was subjected to discrimination on the basis of her national origin when she was terminated by defendant with the intent to terminate "the African girl."

33. Plaintiff has suffered damages as a proximate and direct result of the discrimination, including but not limited to loss of position, and loss of earnings and benefits in the amount of at least $55,000.

34. Plaintiff has suffered emotional and physical injury as a direct result of the discrimination, and has sustained damages in the amount of at least $50,000.

WHEREFORE, Plaintiff prays:

1. For an injunction requiring that defendant reinstate plaintiff to her position, without loss of seniority;

2. For judgment against defendant for back pay and lost benefits, and for an award of future lost earnings and benefits equivalent to what plaintiff would earn through the effective date of reinstatement, in the amount of at least $55,000, according to proof at trial;

3. For compensatory damages in the amount of at least $50,000;

4. For exemplary damages against defendant, for fraudulent and malicious injury of plaintiff, according to proof at trial;

5. For reasonable attorneys' fees, interest, and costs of suit; and,

6. For such other relief as the Court deems just and proper.

Respectfully submitted,

Karr & Allison, P.C.

      / s /   Theodore S. Allison
Theodore S. Allison (D.C. Bar #441089)
Karr & Allison, P.C.
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C.  20036
Telephone (202) 331-7600

Attorneys for Plaintiff

**Demand for Jury Trial**

Plaintiff respectfully requests a trial by jury on all claims stated herein which by law may be tried to a jury, pursuant to the laws of the District of Columbia, and the Constitution and Statutes of the United States.

Respectfully submitted,

Karr & Allison, P.C.

    / s /   Theodore S. Allison
Theodore S. Allison (D.C. Bar #441089)
Karr & Allison, P.C.
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C.  20036
Telephone (202) 331-7600

Attorneys for Plaintiff