UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BUKOLA J. ALIBALOGUN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 13-cv-1244 (KBJ) |
| FIRST COAST SECURITY SOLUTIONS, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION

Plaintiff Bukola Alibalogun ("Alibalogun") is a woman of African descent who worked as a security guard in the District of Columbia for approximately nine years. Alibalogun's employment with First Coast Security Solutions, Inc. ("First Coast" or "Defendant") began when First Coast took over a security services contract at a location where Alibalogun already worked, and it ended nine days later when First Coast fired her. Plaintiff has brought the instant action against First Coast, alleging breach of contract and wrongful termination in violation of District of Columbia common law, as well as discrimination based on sexual orientation and national origin in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01–2-1411.06. (Compl., ECF No. 1, ¶¶ 19-20, 23-24, 28, 32.)[1]

Before this Court at present is First Coast's motion to dismiss Plaintiff's breach of contract and wrongful termination claims for failure to state a claim upon which

---

[1] The complaint alleges diversity jurisdiction under 28 U.S.C. § 1332. (*See* Compl. ¶ 2.)

relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that Alibalogun has failed to allege sufficiently any contractual obligation on the part of First Coast and that the allegations of the complaint do not support an exception to First Coast's general right to terminate at-will employees, this Court will **GRANT** First Coast's motion to dismiss with respect to the breach of contract and wrongful termination claims (Counts 1 and 2). What remains of the complaint is Plaintiff's contention that her termination was discriminatory (Counts 3 and 4), which Defendant has denied and with respect to which discovery will proceed. A separate order consistent with this Opinion will follow.

## I. BACKGROUND

### A. Factual Background

The complaint contains only sparse factual allegations; however, certain background facts relevant to Alibalogun's breach of contract and wrongful termination claims are clearly stated. Alibalogun had been employed as a security guard for nine years when First Coast acquired the security services contract at the location where Alibalogun worked. (Compl. ¶ 5.) This acquisition occurred on October 1, 2012, and nine days later, on October 10, 2012, First Coast terminated Alibalogun's employment, ostensibly for making a false entry in a timekeeping log. (*Id.* ¶¶ 5-6.) Alibalogun states that she had a strong performance history and no disciplinary record prior to the termination of her employment. (*Id.* ¶ 5.)

The exact circumstances surrounding Alibalogun's supposedly false log entry are hazy, but based on the allegations in the complaint, it appears that the incident concerned an entry made in the timekeeping log that Alibalogun's supervisor, Stacy

2

Savoy, maintained. (*See id.* ¶¶ 6, 11-12.) Alibalogun claims that on October 3, 2012, she arrived at work 20 minutes early for her 4:00 p.m. shift, but could not park in her customary space because she was driving a borrowed truck that was too tall for the parking garage. (*Id.* ¶ 7.) Instead, Alibalogun temporarily parked the truck on the street and informed Savoy that she had arrived but, due to local parking regulations, needed to move the truck before starting work. (*Id.* ¶ 8.) Alibalogun says she moved the truck and returned in time to start her shift at 4:00 p.m. (*Id.* ¶ 9.) When she returned, Alibalogun alleges, the prior security guard on duty—Vonetta Moon, with whom Alibalogun shared a "duty belt"—had taken a break, and Alibalogun had to wait for Moon to return before Alibalogun could take her post. (*Id.* ¶¶ 10-11.)[2] Moon, apparently, did not return until sometime after 4:00 p.m. (*See id.*) According to the complaint, Savoy was aware of these events and instructed Alibalogun to sign the timekeeping log as though Plaintiff had started working exactly at 4:00 p.m. (*See id.*) Alibalogun did so, and according to the complaint, she was subsequently fired for making this seemingly false entry, despite her claim that she was following her supervisor's directions. (*Id.* ¶¶ 6, 11.)

### B. Procedural History

On August 14, 2013, Plaintiff filed the instant complaint in federal court. Count 1 of Plaintiff's complaint alleges breach of contract, based on "customs, practices, and policies" in the "security guard industry," which "taken together, form a set of contractual expectations[,]" including "the expectation that termination will not be for a

---

[2] Neither Plaintiff nor Defendant explains what, exactly, a duty belt is; however, courts have recognized that "a duty belt," also known as a "'Sam Brown belt,'" is an article of "protective gear" worn by law enforcement professionals that may contain items such as "a radio case, pepper mace, a baton strap, a magazine pouch, handcuffs, a holster, and a first responder's pouch." *Lesane v. Winter*, 866 F. Supp. 2d 1, 2 (D.D.C. 2011).

3

dishonest or deceitful reason." (*Id.* ¶ 19.) Count 2 of the complaint alleges wrongful termination, under essentially the same rationale. (*See id.* ¶ 23.) Plaintiff's complaint also alleges discrimination based on sexual orientation (Count 3) and national origin (Count 4) in violation of the DCHRA. (*Id.* ¶¶ 28, 32.)[3]

On October 30, 2013, First Coast filed the instant motion to dismiss the complaint in part, arguing that Counts 1 and 2 must be dismissed pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (Def.'s Mot. to Dismiss, ECF No. 5, at 1.)[4] Specifically, First Coast argues that Plaintiff has failed to allege adequately the elements of her breach of contract and wrongful termination claims under D.C. law, and thus, that the complaint fails to state a claim upon which relief can be granted. With respect to the breach of contract claim (Count 1), First Coast asserts that Alibalogun has failed to allege either the existence of a valid contract or any duty arising out of such contract, as D.C. law requires. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Br."), ECF No. 5, at 2-7, 3-4.) As for the wrongful termination claim (Count 2), First Coast contends that Alibalogun has failed to "identify a specific law as the source of the public policy allegedly violated[.]" (Def.'s Br. at 5.) In response, Alibalogun maintains that she has alleged sufficient facts to withstand Defendant's motion to dismiss Counts 1 and 2. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br."), ECF No. 6, at 1.)

---

[3] Counts 3 and 4 are not before this Court at present because Defendant has moved only to dismiss Counts 1 and 2. Defendant, however, denies liability with respect to Counts 3 and 4 in its answer. (Answer, ECF No. 3, at ¶¶ 28, 32.)

[4] Page numbers throughout this Opinion refer to the page numbers that the Court's electronic filing system assigns.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint against it on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must comply with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requirement is meant to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in original)).

"Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting *Twombly*, 550 U.S. at 555). In other words, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere conclusory statements" of misconduct are not enough to make out a cause of action against a defendant. *Id.* Rather, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss, "[t]he court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual

5

inferences drawn from well-pleaded factual allegations." *Busby*, 932 F. Supp. 2d at 134. Although the Court must accept as true the facts in the complaint, it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint[,]" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), nor is the court "bound to accept as true a legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. ANALYSIS

#### A. Breach Of Contract (Count 1)

Plaintiff first contends that certain "customs, practices, and policies" in the security guard industry gave rise to a contract for employment between Alibalogun and First Coast that First Coast allegedly breached when it terminated Plaintiff "for a dishonest or deceitful reason." (Compl. ¶¶ 19-20.)[5] Contrary to First Coast's argument that Plaintiff has failed to allege the existence of "[any] contract whatsoever" (Def.'s Br. at 4), it is clear from the alleged facts that Plaintiff maintains that her employment was "at will"—meaning that Alibalogun's employment resulted from "a hiring not accompanied by an expression of a specific term of duration" that nonetheless gave rise to an "employment relationship terminable at will by either party at any time." *Strass v. Kaiser Found. Health Plan of Mid-Atlantic*, 744 A.2d 1000, 1011 (D.C. 2000) (internal quotation marks and citation omitted). It is well settled in this jurisdiction that "[a]t-will employment should not be viewed as the absence of contract, but as a 'species of contract[.]'" *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 67 (D.D.C. 2005)

---

[5] To state a claim for breach of contract under D.C. law, a plaintiff must allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

(quoting *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 32 (D.D.C. 1999)). Accordingly, by alleging employment with First Coast, Alibalogun has adequately alleged the existence of a contract for at-will employment under D.C. law.

Even so, Alibalogun's breach of contract claim falters. In order to state a claim for breach of contract based on termination of at-will employment, a plaintiff "bears the burden of alleging facts sufficient to show that 'the parties intended that termination be subject to specific preconditions.'" *Id.* at 70 (quoting *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 91 n.4 (D.D.C. 2004)); *accord Strass*, 744 A.2d at 1011. "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991). Thus, where a plaintiff fails to "plead facts that would show that both parties intended to alter the presumption of at-will employment, he has no remedy in contract law for his termination." *Daisley*, 372 F. Supp. 2d at 70.

The instant complaint does not contain any specific allegations that First Coast or its predecessor intended for Alibalogun's termination to be subject to preconditions. Alibalogun nonetheless maintains that employers of security guards are subject to special obligations—including an obligation not to terminate their security guards for "dishonest or deceitful reason[s]"—by virtue of "customs, practices, and policies" particular to the security guard industry. (Compl. ¶ 19.) In effect, then, Alibalogun argues that these supposed "customs, practices, and policies" somehow render security guards uniquely *not* at-will employees, but Plaintiff fails to identify any authority to support the novel proposition that security guards have a special employment status, and she overlooks precedent that plainly contradicts her argument. *See, e.g.*, *Lockhart*

7

*v. Coastal Int'l Sec., Inc.*, 2013 WL 6571605, at *3 (D.D.C. Dec. 14, 2013) (granting summary judgment to defendant on plaintiff security guard's claim for wrongful termination of at-will employment); *Robinson v. Securitas Servs., Inc.*, 819 F. Supp. 2d 18, 20 (D.D.C. 2011) (treating plaintiff security guard as an at-will employee); *see also Quarles v. Colo. Sec. Agency, Inc.*, 843 F.2d 557, 558 (D.C. Cir. 1988) (noting district court's holding that "as an at-will-employee, [plaintiff security guard] had no basis upon which to challenge [his] firing").

Unfortunately for Alibalogun, the complaint's breach of contract allegations amount to nothing more than "naked assertion[s]" of employment obligations on the part of First Coast that "stop short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Even construing the alleged facts in a light most favorable to Plaintiff, this Court cannot reasonably infer an explicit or implicit agreement on the part of First Coast or its predecessor to alter the presumption of at-will employment as it pertained to Alibalogun's termination, much less a unique employment classification for all security guards. Therefore, because a court "need not accept inferences drawn by plaintiffs if such inferences are unsupported" by facts actually alleged, *Kowal*, 16 F.3d at 1276, this Court holds that Alibalogun has failed to allege adequately the existence of any relevant obligation or duty arising from her at-will employment contract, and, consequently, the Court concludes that Count 1 fails to state a claim upon which relief can be granted.

**B.      Wrongful Termination (Count 2)**

Alibalogun also alleges wrongful termination. (Compl. ¶¶ 23-24.) Under D.C. law, "there is a public policy exception to th[e] general rule" that employers may

terminate at-will employees at any time for any reason. *Myers v. Alutiiq Int'l Solutions, LLC*, 811 F. Supp. 2d 261, 266 (D.D.C. 2011). In *Adams v. George W. Cochran & Co.*, the District of Columbia Court of Appeals held "that there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." 597 A.2d at 34. The Court later made clear "that the 'very narrow exception' created in *Adams*" was not so narrow as to foreclose the exception entirely, and specifically, that the exception "should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition." *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997).

This all means that there is a so-called "public policy exception" to an employer's ability to terminate an employee at will that provides a cause of action for wrongful termination where an at-will "employee acted in furtherance of a public policy"—say, by refusing to violate the law—and was terminated solely on the basis of such conduct. *Myers*, 811 F. Supp. 2d at 266 (citing *id.* at 163 (Terry, J., concurring)). To state a claim for wrongful termination, plaintiff employees must show that a claimed public policy is "clearly reflect[ed]" and "firmly anchored either in the Constitution or in a statute or regulation[,]" *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803 n.7 (D.C. 1999) (citing *Carl*, 702 A.2d at 162 (Terry, J., concurring)), and "'there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination[,]'" *Robinson*, 819 F. Supp. 2d at 20 (quoting *Carl*, 702 A.2d at 164 (Terry, J., concurring)). For example, courts applying District of Columbia law

9

have applied this public policy exception where employers fired at-will employees for: (1) refusing to violate statutory or regulatory laws, *Adams*, 597 A.2d at 34; (2) reporting wrongdoing in government contracting, *Myers*, 811 F. Supp. 2d at 267; (3) refusing to participate in partisan political and legislative activities in violation of section 501(c)(3) of the Internal Revenue Code and Department of Labor regulations, *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 21 (D.D.C. 2002); (4) following District of Columbia food safety laws, *Washington v. Guest Servs., Inc.*, 718 A.2d 1071, 1080-1081 (D.C. 1998); and (5) threatening to report improper storage of pharmaceuticals, *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1331 (D.C. Cir. 1999). *See also Coleman v. Dist. of Columbia*, 828 F. Supp. 2d 87, 96 (D.D.C. 2011) (cataloging public policies sufficient to support a wrongful termination claim).

In the instant case, Plaintiff's complaint neither cites any particular public policy that Alibalogun was acting to advance when she was fired nor supplies the Court with law from which a relevant public policy might be derived. Instead, Alibalogun offers the bare assertion that employers may not terminate security guards for "a false reason." (Compl. ¶ 24.) Such assertion, without more, is plainly insufficient to support a claim for wrongful termination. *See Robinson*, 819 F. Supp. 2d at 21-22 (dismissing plaintiff's wrongful termination claim where plaintiff "never actually cites in her Complaint to any statute or municipal regulation that she claims embodies or articulates the public policy" at issue).

In her opposition brief, Plaintiff belatedly points to 18 U.S.C. § 1001 (Pl.'s Br. at 4), which address penalties for fraud and false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the

United States[,]" 18 U.S.C. § 1001(a). Alibalogun argues "that the security contract for which defendant had employed [her] was a contract with the federal government" (Pl.'s Br. at 3), and that "[f]iring a security guard in order to redirect blame for falsifying a government record"—presumably the timekeeping log kept by Savoy—"would undermine the policies embodied in Section 1001," (Pl.'s Br. at 4). In support of this argument, Alibalogun relies on a Colorado Supreme Court case, *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992), for the proposition that "Section 1001 of Title 18 (false statements) has been held to embody a public policy of the kind on which a wrongful discharge claim may be predicated." (Pl.'s Br. at 4 (citing *id.*).)

Plaintiff's reliance on the *Martin Marietta Corp.* case is misplaced for at least two reasons. First, in *Carl v. Children's Hospital*, the District of Columbia Court of Appeals directly rejected the Colorado Supreme Court's "more expansive" reading of public policy exceptions to at-will employment. 702 A.2d at 163 (citing *Martin Marietta Corp.*, 823 P.2d at 106 & n.3); *see also id.* (rejecting other courts' "nebulous . . . concept[s] of public policy"). Second, even assuming that *Martin Marietta Corp.* was good law in this jurisdiction, which it is not, the plaintiff in that case was an at-will employee of a government contractor who claimed that he was fired for *refusing* to make false statements in government reports that would have violated 18 U.S.C. § 1001. *See* 823 P.2d at 103-104. As noted above, Alibalogun's complaint merely alleges that First Coast terminated her for "a false reason." (Compl. ¶ 24.) And Plaintiff's belated argument that First Coast fired her to cover up Savoy's alleged falsification of the timekeeping log—or, alternatively, that "if the false reason given for plaintiff's termination was for the purpose of avoiding responsibility for overtime compensation"

11

then Alibalogun's termination might violate public policies "under[lying] the Fair Labor Standards Act," (Pl.'s Br. at 4)—are too little too late, given that such claims are manifestly "unsupported by the facts set out in" Plaintiff's complaint, *Kowal*, 16 F.3d at 1276.

Accordingly, this Court finds that the complaint's Count 2 fails to state a claim upon which relief can be granted, and thus must be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, this Court concludes that Alibalogun has failed to state claims upon which relief can be granted with respect to Counts 1 and 2 of her complaint. Accordingly, Defendant's motion to dismiss the complaint in part will be **GRANTED**, and Counts 1 and 2 of Plaintiff's complaint will be **DISMISSED**. A separate Order accompanies this Memorandum Opinion.

Date:  September 11, 2014

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge